IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| T.C. ANDERSON, ID # 1135376, | ) | |
|     Petitioner, | ) | |
| vs. | ) | No. 3:05-CV-2331-D (BH) |
| | ) | ECF |
| NATHANIEL QUARTERMAN, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
|     Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

I. BACKGROUND

A. Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his Hunt County convictions for aggravated sexual assault, sexual assault of a child, and indecency with a child in Cause Nos. 21,057 and 21,063. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

B. Procedural and Factual History

On January 25, 2002, in a single-count indictment, the State charged Petitioner with sexually assaulting his daughter on September 1, 1994. (Mem. Supp. Am. Pet. at 2.)[1] The case proceeded

---
[1] Although the state habeas record contains some relevant records concerning these earlier charges and trial, the Court may also rely on uncontested statements of fact in Petitioner's memorandum in support of his amended petition.

to trial, but the jury was unable to reach a unanimous verdict. (*Id.*); S.H. Tr.[2] at 97, 181, 216-20; S.H. Tr.-II at 98, 182-88. The jury first sought guidance from the trial court because it was split "8-4". S.H. Tr. at 216; S.H. Tr.-II at 184. After returning to deliberations following an *Allen*[3] charge by the trial court, the jury indicated that it continued to be deadlocked and that "further deliberation would be fruitless." S.H. Tr. at 218-20; S.H. Tr.-II at 186-88. The court then declared a mistrial over Petitioner's objections. (Mem. Supp. Am. Pet. at 2.)

On April 26, 2002, the State indicted Petitioner for twenty-nine separate sexual offenses involving his daughter – one count of indecency with a child and fourteen counts of aggravated sexual assault of a child that occurred between May 15, 1994, and September 17, 1996, and fourteen counts of sexual assault of a child that occurred between October 17, 1996, and September 17, 1998. CR-I[4] at 3-7 (indictment); CR-II at 5-10 (indictment).

The case proceeded to trial before a jury on July 18, 2002. Reporter's Record, Vol. II at 1 [hereinafter cited as RR-volume # at page]. At trial, the daughter testified that Petitioner began having sexual intercourse with her when she was twelve, and that such conduct continued until she was nearly seventeen. *See id.* at 96, 100-08, 176. Petitioner's first sexual advances toward her in 1994 ended prior to sexual intercourse, but he had sexual intercourse with her a week or two later. *Id.* at 101-04. He would have sexual intercourse with her occasionally at times and more regularly at other times – "like every other day, almost". *Id.* at 105-06. The intercourse occurred so fre-

---

[2] "S.H. Tr." denotes the state habeas records attached to *Ex parte Anderson*, No. 61974-01, slip op. (Tex. Crim. App. July 13, 2005). "S.H. Tr.-II" denotes the state habeas records attached to *Ex parte Anderson*, No. 61974-02, slip op. (Tex. Crim. App. July 13, 2005).

[3] *Allen v. United States*, 164 U.S. 492 (1896).

[4] "CR-I" refers to the Clerk's Record in Cause No. 21,057. "CR-II" refers to the Clerk's Record in Cause No. 21,063.

2

quently that she did not know how many times it occurred. *Id.* at 176-77. She indicated that the conduct occurred "a lot" in 1995, and further indicated that "a lot" meant "[t]oo many to count." *Id.* at 177. Her high school boyfriend testified that after his eighteenth birthday in September 1999, she told him that her father had "had sex with her since she was 14." *Id.* at 67, 79.

On July 22, 2002, a jury convicted Petitioner of aggravated sexual assault, sexual assault, and indecency with a child. RR-III at 65-68. The trial court sentenced him to life imprisonment. RR-V at 37. On September 30, 2003, the court of appeals affirmed the convictions in separate orders. *See Anderson v. State*, No. 06-02-00171-CR, 2003 WL 22232834, at *4 (Tex. App. – Texarkana Sept. 30, 2003, pet. ref'd) (affirming convictions for sexual assault of a child younger than seventeen); *Anderson v. State*, No. 06-02-00172-CR, 2003 WL 22234636, at *1 (Tex. App. – Texarkana Sept. 30, 2003, pet. ref'd) (affirming convictions for aggravated sexual assault of a child younger than fourteen and indecency with a child). On May 12, 2004, the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review. (Am Pet. ¶ 9.)

On March 16, 2005, Petitioner filed two state applications for writ of habeas corpus to challenge his convictions. *See* S.H. Tr. at 5; S.H. Tr.-II at 5. On July 13, 2005, the Texas Court of Criminal Appeals denied the applications without written order. *Ex parte Anderson*, No. 61974-01, slip op. at 1 (Tex. Crim. App. July 13, 2005); *Ex parte Anderson*, No. 61974-02, slip op. at 1 (Tex. Crim. App. July 13, 2005).

In November 2005, Petitioner commenced this action by filing a petition for writ of habeas corpus. (*See* Pet. at 1, 9.) With leave of court, Petitioner filed an amended petition in October 2006. (*See* Am. Pet. at 1; Order of Dec. 5, 2006.) Respondent thereafter filed an answer and pro-

vided state-court records. (Resp.'s Answer.) Petitioner subsequently filed a reply brief. (Petr.'s Obj'ns to Answer, hereinafter referred to as Reply.)

C. <u>Substantive Issues</u>

In four grounds for relief, Petitioner raises the following six claims in this action: (1) violation of confrontation clause when prosecution called an underage outcry witness in violation of *Crawford v. Washington*, 541 U.S. 36 (2004); (2) legal insufficiency of the evidence; (3) factual insufficiency of the evidence; (4) actual innocence; (5) prosecutorial retaliation for rejecting plea offer; and (6) double jeopardy caused by (a) the mistrial over his objections and (b) the additional, more serious charges in the subsequent indictments. (*See* Am. Pet. at 7-8; Mem. Supp. Am. Pet. at 1-27.)

D. <u>Procedural Issues</u>

Respondent argues that Claims 1, 5, and 6(b) are procedurally barred from this Court's review because Petitioner has not exhausted his state remedies with respect to such claims. (*See* Answer at 7-11.) He also argues that Claims 3 and 4 are not cognizable on habeas review. (*Id.* at 15-17, 22-23.)

## II. ALLEGED NON-COGNIZABLE CLAIMS

Respondent argues that Petitioner raises two claims that are not cognizable on federal habeas review, *i.e.*, Claim 3 (factual insufficiency of the evidence) and Claim 4 (actual innocence).

Federal habeas relief cannot be had "absent the allegation by a [petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). The courts entertain federal petitions under § 2254 only on grounds that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). Because Petitioner is un-

doubtedly in custody pursuant to a judgment of a State court, the Court must determine whether Petitioner's factual-insufficiency or actual-innocence claims allege a violation of the Constitution or laws or treaties of the United States.

### A. <u>Factual Insufficiency</u>

"Texas state appellate courts are imbued with the authority to conduct factual sufficiency reviews of the evidence. The authority to conduct factual sufficiency reviews derives from the Texas Constitution and statutory authority, and not from any federal constitutional right." *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *7 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation citing *Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996)), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005). While Texas has utilized the more exacting factual sufficiency standard, such standard does not implicate federal constitutional concerns. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *Jones v. Quarterman*, No. 3:04-CV-1596-D, 2007 WL 1793560, at *5 (N.D. Tex. June 21, 2007) (findings, conclusions, and recommendation accepted by District Court). "Neither the United States Supreme Court nor the Fifth Circuit Court of Appeals has recognized factual insufficiency as a valid basis for habeas relief." *Braswell*, 2004 WL 2583605, at *7. Claims of factual insufficiency are simply "not cognizable on federal habeas review." *Spencer v. Dretke*, No. 3:02-CV-1988-D, 2005 WL 696719, at *4 n.2 (N.D. Tex. Mar. 23, 2005) (findings, conclusions, and recommendation), *accepted by* 2005 WL 955969 (N.D. Tex. Apr. 26, 2005). Petitioner's factual insufficiency claim is not cognizable on federal habeas review because he has shown no deprivation of any federally-secured right. Claim 3 thus provides no basis for habeas relief in this action.

**B. Actual Innocence**

With respect to whether a petitioner may obtain federal habeas relief on a claim of actual innocence, the Fifth Circuit Court of Appeals has recognized *Townsend v. Sain*, 372 U.S. 293 (1963) as the unequivocal position of the United States Supreme Court on the matter. *See Boyd v. Puckett*, 905 F.2d 895, 896 (5th Cir. 1990); *Armstead v. Maggio*, 720 F.2d 894, 896 (5th Cir. 1983) (per curiam). In *Townsend*, the Court held that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." 372 U.S. at 317, *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). In the Fifth Circuit, actual innocence is not an independent basis for federal habeas relief. *E.g., Graham v. Johnson*, 168 F.3d 762, 788 (5th Cir. 1999); *Lucas v. Johnson*, 132 F.3d 1069, 1075 (5th Cir. 1998); *Jacobs v. Scott*, 31 F.3d 1319, 1324 (5th Cir. 1994). A stand-alone claim of actual innocence is not cognizable on federal habeas review. *See Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006), *cert. denied*, 127 S. Ct. 2099 (2007).

Petitioner, moreover, has not established that he is actually innocent. The Supreme Court has held that to show actual innocence, a petitioner must establish:

> that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt . . . in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial.

*Schlup v. Delo*, 513 U.S. 298, 321 (1995). Petitioner has not met this standard. A jury found Petitioner guilty on the evidence presented against him. Petitioner has provided no new evidence which

exonerates him.[5] Because actual innocence based upon new evidence relevant to the guilt of a state prisoner is not cognizable on federal habeas corpus, and Petitioner has not shown himself to be actually innocent in any event, Claim 4 entitles him to no federal habeas relief.

### III. PROCEDURAL BAR

Respondent asserts that Petitioner has procedurally defaulted Claims 1, 5, and 6(b) by failing to properly present them to the Texas Court of Criminal Appeals. (*See* Answer at 7-11.)

In general, federal courts may not review a state court decision that rests on an adequate and independent state procedural default unless the habeas petitioner shows "cause" for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989). When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *See id.*; *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995). Furthermore, when a claim has not been reviewed by the state's highest court, this Court may find such claim procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). The general rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply when a petitioner has not presented his claims to the highest court of the state and the state court to which he would be required to present his claims would now find the claims procedurally barred. *Id.*

To present a claim to the highest state court means that the petitioner has fairly presented such claim to the correct court in a procedurally proper manner. *See Carter v. Estelle*, 677 F.2d 427,

---

[5] In fact, Petitioner specifically indicates that he has never claimed that newly discovered evidence demonstrates his actual innocence. (*See* Reply at 2, 7-8.)

443 (5th Cir. 1982). One does not fairly present the substance of a particular claim by raising a claim based upon a different legal theory. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). "It is not enough that all the facts necessary to support the . . . claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted). When a petitioner raises a claim on federal habeas review based upon a legal theory distinct from the theory relied upon in the state court, he has not properly presented the federal claim to the state courts. *See Wilder*, 274 F.3d at 259.

To find that Claims 1, 5, and 6(b) are procedurally barred from federal habeas review, the Court must find the following: that Petitioner procedurally defaulted such claims; the state court either relied upon such default or would do so if the claim were now presented to it; and Petitioner has not overcome the procedural bar by showing cause for and prejudice from such default, or by demonstrating that application of the bar will result in a fundamental miscarriage of justice.

In his reply brief, Petitioner concedes that Claim 1 is unexhausted but contends that his claim of prosecutorial misconduct is incorporated into his actual innocence claim that his trial was so infected with unfairness so as to violate his Fourteenth Amendment rights. (*See* Reply at 1-2.) A review of the claims Petitioner raised in state court reveals that he did not raise Claims 1, 5, or 6(b) to the Texas Court of Criminal Appeals at any point in the state review processes. *See Anderson v. State*, No. 06-02-00171-CR, 2003 WL 22232834, at *4 (Tex. App. – Texarkana Sept. 30, 2003, pet. ref'd) (showing claims raised on appeal); *Anderson v. State*, No. 06-02-00172-CR, 2003 WL 22234636, at *1 (Tex. App. – Texarkana Sept. 30, 2003, pet. ref'd) (same); S.H. Tr. at 11-12, 15-16 (showing habeas claims); S.H. Tr.-II at 11-12, 15-16 (same). To the extent that Petitioner presented a claim of prosecutorial misconduct or double jeopardy (other than the claim represented by Claim

8

6(a)) to the Court of Criminal Appeals, he did so in a different context than he has in the instant federal petition. The failure to present Claims 1, 5, and 6(b) to the highest court in Texas in a procedurally proper manner constitutes a procedural default that could bar this Court from considering such claims on federal habeas review. *See Smith v. Quarterman*, ___ F.3d ___, ___, No. 03-20401, 2008 WL 186304, at *4-7 (5th Cir. Jan. 23, 2008); *In re Bagwell*, 401 F.3d 312, 315 (5th Cir. 2005); *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004).

Were this Court to require Petitioner to present Claims 1, 5, and 6(b) to the Texas Court of Criminal Appeals, the claims would be subject to dismissal under the Texas abuse-of-the-writ doctrine, Tex. Code Crim. Pro. Ann. art. 11.07, § 4.[6] That doctrine "prohibits a second [state] habeas petition, absent a showing of cause, if the applicant urges grounds therein that could have been, but were not, raised in his first habeas petition." *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (footnote omitted). "[A]rticle 11.07 § 4 is an adequate and independent state procedural ground to bar federal habeas review and . . . has been strictly and regularly applied since 1994." *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000). When such a state procedural ground exists, "federal courts ordinarily will not review questions of federal law." *Id.* Consequently, unless Petitioner can overcome the procedural bar, Claims 1, 5, and 6(b) will not be further considered.

To overcome the procedural bar established by the abuse-of-the-writ doctrine, a petitioner must demonstrate cause and prejudice or a fundamental miscarriage of justice. *See Smith v. Quarterman*, ___ F.3d ___, ___, No. 03-20401, 2008 WL 186304, at *7 (5th Cir. Jan. 23, 2008). For the

---

[6] Texas also has an abuse of writ doctrine specifically applicable to capital cases. *See* Tex. Code Crim. P. Ann. art. 11.071, § 5(a). No material difference exists between the rules or their analysis. *Emery v. Johnson*, 139 F.3d 191, 195 n.3 (5th Cir. 1997). The Court may thus freely cite to either capital or non-capital cases that address the abuse of writ doctrine.

9

reasons already stated, Petitioner has not shown himself to be actually innocent of the crimes for which he was convicted and therefore cannot show that a fundamental miscarriage of justice will result from a failure to consider his claim. In addition, Petitioner has shown no cause for failing to raise Claims 1, 5, and 6(b) to the Court of Criminal Appeals through his *pro se* state applications for writ of habeas corpus. The Court, furthermore, finds no adequate reason for the failure.

For the foregoing reasons, Petitioner has not overcome the state procedural bar. Accordingly, the procedural default doctrine bars federal habeas relief on Claims 1, 5, and 6(b).[7]

## IV. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[7] Petitioner also seeks a stay of this habeas petition so that he can exhaust any claims the Court finds to be unexhausted. (*See* Mem. Supp. Am. Pet. at 23.) Although the federal courts have limited discretion to stay a habeas petition and hold it in abeyance so as to accord the prisoner an opportunity to return to state court to exhaust previously unexhausted claims, *see Rhines v. Weber*, 544 U.S. 269, 275 (2005), the Texas procedural default doctrine provides an adequate basis to decline a requested stay, *see Gruenfelder v. Quarterman*, No. 3:07-CV-0646-M, 2007 WL 3071015, at *3 (N.D.Tex. Oct 19, 2007) (findings and recommendation of magistrate judge accepted by District Court); *McCray v. Quarterman*, No. 3:07-CV-0940-D, 2007 WL 2873440, at *3 (N.D. Tex. Oct. 2, 2007) (same). In light of the Texas abuse of writ doctrine, the Court should deny the request to stay this action.

10

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

In this instance, each of Petitioner's claims that have yet to be resolved in this action were raised on direct appeal or in his state applications for writ of habeas corpus. The court of appeals addressed the claims raised therein on the merits. *See Anderson v. State*, No. 06-02-00171-CR, 2003 WL 22232834, at *1-4 (Tex. App. – Texarkana Sept. 30, 2003, pet. ref'd); *Anderson v. State*, No. 06-02-00172-CR, 2003 WL 22234636, at *1 (Tex. App. – Texarkana Sept. 30, 2003, pet. ref'd). The denials of Petitioner's state writs constitute adjudications on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). The AEDPA standards enumerated in 28 U.S.C. § 2254(d) thus apply to Petitioner's remaining claims.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions

but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind, the Court proceeds to address the merits of Petitioner's remaining claims.

## V. SUFFICIENCY OF THE EVIDENCE

Petitioner challenges the legal sufficiency of the evidence to support his various convictions. (Am. Pet. at 7.) He argues that there is no evidence that he committed multiple offenses on or about the seventeenth day of each month. (*Id.*; Mem. Supp. Am. Pet. at 9-12.)

"A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense." *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). Federal courts have extremely limited habeas

review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). When reviewing such claims against the underlying conviction, the relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. When "faced with a record of historical facts that supports conflicting inferences [courts] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

Further, under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[] the weight or credibility given the evidence." *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999). The *Jackson* standard applies whether the evidence is direct or circumstantial. *United States v. Scott*, 159 F.3d 916, 920 (5th Cir. 1998).

Federal courts apply the "standard looking to the state's substantive law, giving great weight to the state court's determination." *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000). State case law and statutes bind the courts in their determination of the elements needed to be proven. *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). In reviewing a challenge to the sufficiency of the evidence supporting the underlying conviction, the courts must explicitly refer "to the substantive elements of the criminal offense as defined by state law." *Bledsue v. Johnson*, 188 F.3d 250, 259 (5th

13

Cir. 1999) (quoting *Jackson*, 443 U.S. 324 n.16). The federal courts must "independently analyze the governing statute, the indictment, and the jury charge to measure the constitutional sufficiency of the evidence and determine what are the *essential elements* required by the *Jackson* sufficiency inquiry." *Id.* at 260. Such independent analysis is required so as to avoid reliance upon an incorrect jury charge or indictment. *Id.*

In two indictments, the State charged Petitioner in this case with fourteen counts of sexual assault of a child under the age of seventeen, fourteen counts of aggravated sexual assault of a child under the age of fourteen, and one count of indecency with a child under the age of seventeen. CR-I at 3-7; CR-II at 5-10. The indictment alleging sexual assault specifically charged that on or about various dates between October 1996 and September 1998,[8] in Hunt County, Texas, Petitioner did

> then and there intentionally and knowingly sexually assault Jane Doe 2228 (pseudonym), a child younger than 17 years of age and not the spouse of the said T. C. Anderson, by causing his sexual organ to contact and/or penetrate the female sexual organ of the said child.

CR-I at 3-6. The other indictment specifically charged that on or about May 15, 1994, in Hunt County, Texas, Petitioner

> did then and there intentionally and knowingly engage in sexual contact with Jane Doe 2228 (pseudonym), a child younger than 17 years and not the spouse of the said T. C. Anderson, by then and there touching the breast of the said Jane Doe 2228 (pseudonym) with intent to arouse and gratify the sexual desire of the said T. C. Anderson.

---

[8] The sexual assault indictment charges fourteen offenses that occurred "on or about the 17th day" of the particular month set forth in the count. CR-I at 3–6. Under Texas law, "'on or about' means before the presentment of the indictment and within the statute of limitations period." *Ex parte Goodman*, 152 S.W.3d 67, 71 (Tex. Crim. App. 2004). Since at least 1993, the applicable statutes of limitations for each offense charged against Petitioner has been no less than ten years from the date of the commission of the offense. *See* Tex. Code Crim. Proc. Ann. arts. 12.01 and 12.03 (Vernon 2005); Tex. Code Crim. Proc. Ann. arts. 12.01 and 12.03 (Vernon 1977 & Various Supps.). There is no dispute that the charged offenses occurred within the applicable limitations periods.

CR-II at 5. With respect to the alleged aggravated sexual assaults, the indictment specifically charged that on or about various days between May 1994 and September 1996,[9] in Hunt County, Texas, Petitioner

> did then and there intentionally and knowingly sexually assault Jane Doe 2228 (pseudonym), a child younger than 14 years of age and not the spouse of the said T. C. Anderson, by causing his sexual organ to contact and/or penetrate the female sexual organ of the said child.[10]

*Id.* at 6-9 (footnote added). The trial court submitted a charge to the jury consistent with the indictments, but omitted the reference to contacting the female sexual organ with respect to the charges of aggravated sexual assault and sexual assault. *See* CR-I at 66-67; CR-II at 93-94.

Furthermore, under Texas law as it existed between October 1996 and September 1998, a person commits a sexual assault of a child if he intentionally or knowingly "causes the penetration of the . . . female sexual organ" of a person who is younger than seventeen years of age and not the spouse of the actor. Tex. Pen. Code. Ann. § 22.011(a)(2)(A) and (c)(1) (Vernon 1994 & Supp. 1998) (showing that 1995 and 1997 amendments have no relevance to the charges against Petitioner). Additionally, under Texas law as it existed between May 1994 and September 1996, a person commits an aggravated sexual assault of a child, if he intentionally or knowingly "causes the penetration of the . . . female sexual organ of a child by any means" and the victim is younger than fourteen years of age. Id. § 22.021(a)(1)(B)(i) and (a)(2)(B) (Vernon 1994 & Supp. 1997) (showing that 1993 and 1995 amendments have no impact on the charges against Petitioner). Under Texas

---

[9] Other than one count that is alleged to have occurred "on or about" September 1, 1994, the indictment charges offenses that occurred "on or about the 17th day" of the particular month set forth in the count. CR-II at 5-9.

[10] Count 2 of the indictment also contained paragraphs relating to finger penetration and mouth contact and/or penetration. CR-II at 6. Because the evidence did not support such allegations, the trial court did not instruct the jury as to these paragraphs. RR-III at 22-23. These allegations are not at issue in this case.

15

law in May 1994, a person commits the offense of indecency with a child when he engages in sexual contact with a child younger than seventeen years old who is not his spouse. *Id.* § 21.11(a)(1) (Vernon 1994) (showing that 1993 amendments which took effect Sept. 1, 1994, have no impact on the charges against Petitioner). The testimony of the child victim alone is sufficient evidence to support convictions for aggravated sexual assault, sexual assault, and indecency with a child. Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App. – Fort Worth 2007, no pet. h.) (indecency conviction); *Mallet v. State*, 9 S.W.3d 856, 864 (Tex. App. – Fort Worth 2000, no pet. h.) (aggravated sexual assault conviction); *Empty v. State*, 972 S.W.2d 194, 196 (Tex. App. – Dallas 1998, pet. ref'd) (same).

In this instance, the complainant provided sufficient testimony to support the convictions. Her testimony shows that Petitioner fondled her breasts when she was twelve years old and that he thereafter regularly and consistently engaged in sexual intercourse with her until she was nearly seventeen years old. Under *Jackson*, the complainant's testimony alone is sufficient to support Petitioner's convictions for sexual assault, indecency with a child, and aggravated sexual assault. Such testimony established that (1) Petitioner engaged in sexual contact by the aforementioned fondling and (2) he intentionally and consistently caused the penetration of her female sexual organ numerous times between May 1994 and September 1998. Furthermore, such testimony was consistent with what the complainant had told her boyfriend.

Viewed in a light most favorable to the prosecution, the Court finds that the record supports the jury verdicts. From the evidence, a rational jury could conclude that Petitioner intentionally or knowingly caused the penetration of the complainant's female sexual organ on fourteen separate and distinct occasions between May 1994 and September 1996 when she was under the age of fourteen

and fourteen additional distinct occasions between October 1996 and September 1998 when she was under the age of seventeen. A rational trier of fact could have found the essential elements of sexual assault, aggravated sexual assault, and indecency with a child beyond a reasonable doubt. By using the phrase, "on or about", the State was not required to show a sexual assault or indecency with a child on the dates listed in the indictments.

The evidence was constitutionally sufficient to convict Petitioner of the charged offenses. Furthermore, the state findings that sufficient evidence supports his convictions appear consistent with *Jackson*, the clearly established Federal law applicable to sufficiency claims. The decisions also appear to be a reasonable application of such law and based upon a reasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) and (2). For all of these reasons, the claim of insufficient evidence entitles Petitioner to no habeas relief.

## VI. DOUBLE JEOPARDY

Petitioner claims that his second trial subjected him to double jeopardy because the trial court entered a mistrial in the first case over his objections. (Am. Pet. at 8; Mem. Supp. Am. Pet. at 21-23.)

The Double Jeopardy Clause protects against multiple prosecutions and punishments for the same offense. *See Monge v. California*, 524 U.S. 721, 727 (1998). A defendant may be "placed in jeopardy so as to bar a second trial on the same charge" even in the absence of a verdict of guilt or innocence. *Green v. United States*, 355 U.S. 184, 188 (1957). In general, "a defendant is placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his consent he cannot be tried again." *Id.* However, when unforeseeable circumstances arise during the first trial which make its completion impossible, "such as the failure of a jury to agree on a verdict", jeopardy

17

generally does not attach and a mistrial based upon such failure does not bar a second trial. *Id.* (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)).

A prosecutor can avoid the double jeopardy bar presented by a mistrial declared over objection of the defendant by demonstrating "manifest necessity" for the mistrial. *Arizona v. Washington*, 434 U.S. 497, 505 (1978). There is no mechanically applied standard to guide the courts in determining the existence of manifest necessity. *Id.* at 506. Literal necessity is certainly not required. *Id.* Thus, while the standard provides flexibility based upon the circumstances, there must be a "high degree" of necessity before concluding that a mistrial is appropriate. *Id.* Lying at one end of the spectrum "is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial." *Id.* at 509. Reviewing courts accord great deference to decisions to declare a mistrial when the jury is deadlocked. *Id.* at 510.

In this instance, Petitioner complains about a declared mistrial in his first trial after the jury expressly professed an irreconcilable conflict as to his guilt or innocence. Although the jury may not have deliberated very long,[11] the trial court instructed them to continue deliberating after their first indication that they were split and could not reach a verdict. After a second indication that the jury was deadlocked and further deliberations would not result in a verdict, the trial court declared a mistrial. Under the facts of the case, it appears that such declaration was manifestly necessary. *See Arizona*, 434 U.S. at 505.

Petitioner raised this claim in his state applications for writ of habeas corpus and has not shown that the decision to deny habeas relief at the state level is inconsistent with applicable

---

[11] Petitioner alleges in his memoranda supporting his state applications for writ of habeas corpus that the jury deliberated only eighty minutes before the trial court declared a mistrial in his first trial. *See* S.H. Tr. at 22; S.H. Tr.-II at 22.

Supreme Court precedent. The decision involved no unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, Petitioner is entitled to no habeas relief on the double claim raised in the instant petition.

## VII. EVIDENTIARY HEARING

Upon review of the petition and answer filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VIII. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254. The District Court should also **DENY** Petitioner's request to stay this action so that he can return to state court to exhaust his unexhausted claims.

**SIGNED** this 29th day of February, 2008.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE